IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUANITA PÉREZ ORENCH and CARLOS JAVIER BURGOS BENITEZ,<br><br>**Plaintiffs,**<br><br>v.<br><br>ACTING SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, ELAINE DUKE; TRANSPORTATION SECURITY ADMINISTRATION; PRESIDENT OF THE UNITED STATES OF AMERICA, JOSEPH R. BIDEN; UNITED STATES ATTORNEY'S OFFICE; DEPARTMENT OF JUSTICE; AEROSTAR AIRPORT HOLDING, LLC; PUERTO RICO PORT AUTHORITY; X, Y AND Z INSURANCE COMPANIES; JOHN DOE; MARK DOE; JOE DOE; and CLARK DOE,<br><br>**Defendants.** | CIVIL NO. 17-1715 (JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Juanita Peréz Orench ("Plaintiff") and Carlos Javier Burgos Benitez ("Co-Plaintiff Burgos Benitez") (collectively, "Plaintiffs") brought this action against Defendants Elaine Duke, Secretary of the Department of Homeland Security ("DHS")[1]; the Transportation Security Administration ("TSA"); the President of the United States of America, Joseph R. Biden[2]; the United States Attorney's Office; the Department of Justice; Aerostar Airport Holding, LLC ("Aerostar"); the

---

[1] In accordance with the Federal Rule of Civil Procedure 25(d), the Acting Secretary of DHS is automatically substituted as a party. Fed. R. Civ. P. 25(d).

[2] In accordance with the Federal Rule of Civil Procedure 25(d), the President of the United States is automatically substituted as a party. Fed. R. Civ. P. 25(d).

CIVIL NO. 17-1715 (JAG)                                                                2

Puerto Rico Port Authority ("Port Authority"); X, Y, and Z Insurance Companies; John Doe; Mark Doe; Joe Doe; and Clark Doe (collectively "Defendants").[3] Docket No. 1. Plaintiffs allege violations of the Occupational Safety and Health Administration Act ("OSHA"), 29 C.F.R. § 1980; Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; Puerto Rico Law No. 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit. 29, § 146; and Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. LAWS ANN. tit. 31, § 5141.

Pending before the Court are Aerostar's Motion to Dismiss, Docket No. 25; and DHS's Motion to Dismiss, Docket No. 41. The Port Authority filed a Motion for Joinder as to Aerostar's Motion to Dismiss. Docket No. 29. For the reasons outlined in this Opinion and Order, DHS's Motion to Dismiss, Docket No. 41, is hereby **GRANTED**; and Aerostar and the Port Authority's Motion to Dismiss, Docket No. 25, is hereby **GRANTED in part** and **DENIED in part**.

BACKGROUND[4]

Plaintiff is a TSA employee at the Luis Muñoz-Marín Airport (the "Airport"),[5] who had no disciplinary actions and had received "excellent" performance reviews prior to the events underlying the Complaint. Docket No. 1 at ¶¶ 53-54. Aerostar is the private administrator of the Airport. Docket No. 29 at 1.

On March 18, 2014, Plaintiff filed a TSA Form 2400: Unsafe or Healthful Working Condition Employee Report and Investigation (the "2014 Report").[6] Docket No. 1 at ¶ 21. From

---

[3] The Court shall refer to Co-Defendants DHS, TSA, the President of the United States of America, the United States Attorney's Office, and the Department of Justice as the "Federal Defendants."

[4] The facts are taken principally from Plaintiffs' Complaint, Docket No. 1, and are presumed to be true.

[5] The Port Authority is the owner of the Airport. Docket No. 29 at 2.

[6] The impetus and content of the 2014 Report is not described in the pleadings.

CIVIL NO. 17-1715 (JAG)                                                                  3

October 22, 2014, to November 11, 2014, Plaintiff was hospitalized for bronchial pneumonia, bronchitis, and other breathing complications. *Id.* ¶ 17. Two months after her hospital stay, Plaintiff requested sick leave. *Id.* Two months after she returned to the office, Plaintiff was again hospitalized from May 11, 2015, to May 29, 2015. *Id.* ¶ 18. Plaintiff was diagnosed with steroid induced myopathy, "a condition that [] she developed due to the extended use of steroids to treat [her] lung condition." *Id.* On June 15, 2015, a TSA Investigator informed Plaintiff that she was under investigation "for a TA Fraud allegation submitted in May 2014."[7] *Id.* ¶ 19. Plaintiff alleges the investigation was in retaliation for filing the 2014 Report. *Id.* Subsequently, in July 2015, OSHA visited the Airport's TSA offices, met with Plaintiff, and took samples of visible mold in the office. *Id.* ¶ 20. Plaintiff did not receive the results of the tests performed on the samples nor was she provided status updates. *Id.*

On October 7, 2015, Plaintiff emailed her supervisor, Merfil Cuesta ("Cuesta"), to request information on the 2014 Report as the matter had not been assigned a case number and she had not received a response. *Id.* ¶ 21. Later, on October 8, 2015, Program Specialist Francis O'Donnell, emailed an Aerostar Holding Corporation Manager to request an air quality test in the TSA Administrative Offices. *Id.* ¶ 22. The email communication was forwarded to the General Services Administration ("GSA") Lease Management Specialist, "who handles the lease from TSA and federal agencies." *Id.*

Plaintiff was hospitalized yet again from October 10, 2015, to October 21, 2015. *Id.* ¶ 23. Plaintiff underwent rehabilitation treatment for steroid myopathy and was released in a

---

[7] The allegation was submitted by DAFSD Carlos Rivera and manager Cecilia Barela in May 2014. Docket No. 1 ¶ 19. The Court assumes DAFSD stands for Deputy Federal Security Director. *See Executive Leadership at TSA*, Transportation Security Administration (March 30, 2023), https://jobs.tsa.gov/executive-positions.

CIVIL NO. 17-1715 (JAG)                                                         4

wheelchair with home care physical therapies. *Id.* On October 13, 2015, while Plaintiff was hospitalized, the GSA Lease Management Specialist emailed the Aerostar Holding Corporation Manager requesting an air quality test in the TSA Administrative Offices. *Id.* ¶ 24. Plaintiff filed a second TSA Form 2400 on October 19, 2015—assigned case number I-15-5143—complaining of the mold and humidity in the TSA Administrative offices. *Id.* ¶ 25. Plaintiff made a Reasonable Accommodation Request on December 19, 2015. *Id.* ¶ 26.

Plaintiff was hospitalized again in February 2016 for respiratory issues and received rehabilitation treatment for steroid myopathy. *Id.* ¶ 27. Plaintiff was scheduled to receive outpatient physical therapy upon her release. *Id.* Plaintiff's Reasonable Accommodation Request was approved on March 4, 2016, and she was permitted to work from home until July 2016. *Id.* ¶ 28. From October 31, 2016, to November 25, 2016, Plaintiff was hospitalized for a fifth time for the same respiratory conditions, which had left her wheelchair bound. *Id.* ¶¶ 29-30. On April 19, 2016, Plaintiff traveled to California to receive a second opinion from a physical therapy doctor. *Id.* ¶ 31. On May 23, 2016, Plaintiff met with Cuesta, who stated that that he would search for offices outside of the Airport because Aerostar would not resolve the air quality issue. *Id.* ¶ 32. Plaintiff suffered a health setback after she had to visit the office from August 5, 2016, to August 8, 2016, to work on an upcoming audit. *Id.* Plaintiff still had not received the air quality results when she traveled to Orlando for a second opinion from a pulmonary doctor on October 13, 2016. *Id.*

On May 25, 2016, Plaintiff submitted a claim with OSHA. *Id.* ¶ 33. On August 5, 2016, Plaintiff went to the office and Cuesta informed her that he would deny her Reasonable Accommodation Request. *Id.* ¶ 37. Cuesta stated, "what would people say about you, not being at the office and teleworking but being able to travel." *Id.* Plaintiff informed Cuesta that she had to

CIVIL NO. 17-1715 (JAG)                                                                      5

travel for medical treatment. *Id.* After this office visit, Plaintiff again suffered a health setback. *Id.*
Plaintiff submitted an Occupational Disease Claim to Cuesta on August 23, 2016. *Id.* ¶ 38.

On October 25, 2016, Cuesta sent an email to Plaintiff informing her that, effective
November 21, 2016, her reasonable accommodation would be terminated. *Id.* ¶ 41. Plaintiff was not
provided any further explanation for this decision. *Id.* The email further stated that she would be
relocated to the Security Coordination Center offices and noted that an air quality test had been
conducted. *Id.* Plaintiff responded to Cuesta expressing concerns as to the conditions of the
Security Coordination Center offices that might negatively impact her health and complaining
that the offices were not wheelchair accessible. *Id.* Plaintiff had been told by the Security
Coordinator Center's Supervisor that these offices were "full of humidity because when it rains it
pours in our office and the ceiling tiles fall because of all the water, it smells terrible[,] and I have
complained and I am waiting for results." *Id.*

From October 31, 2016, to November 25, 2016, Plaintiff was again hospitalized for
respiratory complications. *Id.* ¶ 42. While hospitalized, Plaintiff received various communications
from Mr. Cuesta, who knew of her hospitalization, requesting work information. *Id.* On November
2, 2016, Plaintiff received a final determination on her OSHA claim that found violations in the
workplace that made the offices unsuitable for employees. *Id.* ¶¶ 33, 43. On November 14, 2016,
Cuesta sent Plaintiff a Performance Evaluation for her to sign and return. *Id.* ¶ 45. Plaintiff, who
was still hospitalized, objected to the evaluation. *Id.* She sent a text message to Cuesta with an
update as to her health condition and requested a response from him as to her objection to the
performance evaluation. *Id.* Plaintiff sent subsequent text messages that went unanswered and
did not receive an explanation as to why she had received a significantly lower score than the
previous year. *Id.*

CIVIL NO. 17-1715 (JAG)                                                              6

A few days after her discharge from the hospital, Plaintiff requested an extension of her reasonable accommodation. *Id.* ¶¶ 46-47. On December 5, 2016, Cuesta approved Plaintiff's request to telework, effective December 12, 2016, "until further notice." *Id.* ¶ 49. However, on December 13, 2016, Cuesta "unilaterally established that [Plaintiff] had to work the core hours of 0900-1730[]." *Id.* ¶ 50. Plaintiff objected and stated that the original approval of her Reasonable Accommodation Request did not provide set hours and that she should be permitted to work between the core hours of 0600-1800 "like other employees." *Id.* Cuesta did not respond to Plaintiff's email. *Id.* On December 20, 2016, Cuesta emailed Plaintiff, questioning her absence without prior notification. *Id.* ¶ 51. Plaintiff responded on December 31, 2016, clarifying that she had notified him of her hospitalization in prior emails that he did not respond to. *Id.* Plaintiff voiced that she "[felt] harassed[] and persecuted by his constant emails requesting new ways of managing her medical emergency and reasonable accommodation in retaliation [for] her last OSHA claim." *Id.* Plaintiff and Cuesta had a teleconference meeting with the Reasonable Accommodation Office to resolve the dispute. *Id.* ¶ 52. No agreement was reached, and Cuesta denied her reasonable accommodation request. *Id.* On March 5, 2017, Plaintiff was demoted from Supervisory Program Specialist to Supervisory Human Resources Specialist. *Id.* ¶ 53. Plaintiff was replaced with a less experienced Supervisory Program Specialist, who required instruction and assistance from Plaintiff. *Id.* Both Plaintiff and Co-Plaintiff Burgos Benitez have suffered emotional distress as a result of the above-described events. *Id.* ¶¶ 55-56. The Complaint was consequently filed on May 25, 2017. Docket No. 1.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, a plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

### I.   OSHA

Plaintiffs allege that Defendants' conduct violated OSHA. However, this statute does not create a private cause of action. *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 52 (1st Cir. 1991) ("[E]very court faced with the issue has held that OSHA creates no private right of action."); *see also Lopez-Ramos v. Cemex de Puerto Rico, Inc.*, 2020 WL 5224190, *8 (D.P.R. Sept. 1, 2020) ("Circuit and District courts

have repeatedly found that OSHA does not authorize a private cause of action for discriminatory retaliation.") (cleaned up). Thus, this claim must be **DISMISSED WITH PREJUDICE**.

## II.    Title **VII**

Title VII prohibits employers from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To succeed in a discriminatory termination claim, a plaintiff must show that "(1) [she] is a member of a protected class; (2) [her] employer took an adverse employment action against [her]; (3) [she] was qualified for the employment [she] held; and (4) [her] position remained open or was filled by a person whose qualifications were similar to [hers]." *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 13-14 (1st Cir. 2007) (citations omitted). Plaintiffs have not made any allegations that Plaintiff was discriminated against on the basis of her race, color, religion, sex, or national origin. To the contrary, the Complaint alleges discrimination based on Plaintiff's disability and her protected conduct. Thus, Plaintiffs have not pleaded a *prima facie* claim under Title VII. Therefore, Plaintiffs' Title VII claims are hereby **DISMISSED WITH PREJUDICE**.

## III.    ADA

Plaintiffs also allege violations of the ADA. However, as to their claims against the Federal Defendants, the ADA only prohibits discrimination by employers and it specifically excludes the United States from the definition of the term "employer." 42 U.S.C. § 12111 (5)(B). Because of this exclusion, "federal courts have concluded that the ADA provides no remedy to federal employees." *Field v. Napolitano*, 663 F.3d 505, 510 n.6 (1st Cir. 2011) (cleaned up). While Plaintiffs claim the "ADA does confer a private cause of action for Federal Employees," they only cite case law pertaining to the Age Discrimination and Employment Act ("ADEA") and the Rehabilitation Act in support of

their position. Docket No. 27 at 6-7. While Plaintiffs may have a remedy under the Rehabilitation Act, *see id.*, they have failed to plead such a claim. Therefore, Plaintiffs' ADA claims against the Federal Defendants are hereby **DISMISSED WITH PREJUDICE**.

Turning to the ADA claims asserted against Aerostar and the Port Authority, a *prima facie* case of disability discrimination requires a showing that the plaintiff "(1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability." *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011) (citations omitted). However, such a claim may only be asserted against an employer and Plaintiff was not employed by Aerostar or the Port Authority. Therefore, Plaintiffs' ADA claims against Aerostar and the Port Authority are hereby **DISMISSED WITH PREJUDICE**.[8]

## IV.   Constitutional Claims and Section 1983 Claims

In their Oppositions to the Motions to Dismiss, Plaintiffs argue their Complaint asserts claims under the First, Fifth, and Fourteenth Amendment of the United States Constitution. Docket Nos. 27 at 2; 42 at 2. However, no such claims are asserted in the Complaint, nor are there any factual allegations that could be plausibly interpreted to assert these claims.

Plaintiffs also posit they assert claims under 42 U.S.C. § 1983 ("Section 1983"). Docket Nos. 27 at 5; 42 at 5. The Complaint makes no mention of a Section 1983 claim. However, any such claim would fail. Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Haywood v. Drown*, 556 U.S. 729, 731 (2009). There is no

---

[8] To the extent that Plaintiffs may be attempting to make an ADA claim under Title II, there is no claim that the Security Coordination Center offices provide public accommodation. *See* 42 U.S.C.S. § 12182. Nor is there any claim that the offices are open to the public or provide goods and services to the public. *Id.* Thus, any claim of disability discrimination would fall under the reasonable accommodation provision in Title I of the ADA.

CIVIL NO. 17-1715 (JAG)                                                          10

allegation that Aerostar or the Port Authority were acting under color of state law and, thus, a Section 1983 claim would not be actionable against Aerostar or the Port Authority.

As to the Federal Defendants, the reach of Section 1983 is limited to "person[s] who [act] under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Therefore, "a [S]ection 1983 claim ordinarily will not lie against a federal actor." *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) (citing *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973)); *see also Redondo-Borges v. United States HUD*, 421 F.3d 1, 6 (1st Cir. 2005) *Chatman v. Hernandez*, 805 F.2d 453, 455 (1st Cir. 1986) ("Section 1983 applies to persons acting 'under color of state law' and not to persons acting pursuant to federal law.") (citation omitted). A federal actor may be subject to a Section 1983 claim "when they are engaged in a conspiracy with state officials to deprive constitutional rights." *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979). Plaintiffs, however, have not made any allegations of a conspiracy between the Federal Defendants and state actors to deprive them of their constitutional rights. Therefore, any Section 1983 claims against the Federal Defendants would also fail.

V.    **State Law Claims**

Because the Court has dismissed all federal claims, it has discretion on whether to "exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). Given the circumstances of this case that have resulted in extended delays, through no fault of Plaintiffs, the Court finds that Plaintiffs will be unduly prejudiced if the Court were to decline to exercise supplemental jurisdiction and dismiss the state law claims at this time. Thus, in the interest of fairness and comity, the Court opts to exercise supplemental jurisdiction. *See Redondo Constr. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011).

A. Law 100

Law 100 is Puerto Rico's general antidiscrimination statute. Law 100 prohibits discrimination in employment on the basis of

> age, race, color, sex, sexual orientation, gender identity, social or national origin, social condition, political affiliation, political or religious beliefs, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking, for being a servicemember, ex-servicemember, serving or having served in the United States Armed Forces, or holding veteran status

P.R. LAWS ANN. tit. 29, § 146. None of these bases are alleged here. However, "[t]he legislative history of [Law] 100 shows that its main objective was to protect employees in the private sector from all types of discrimination . . . ." *Rodríguez Cruz v. Padilla Ayala*, 125 P.R. Offic. Trans. 486, 508 (1990). On the other hand, "Law 44 is Puerto Rico's counterpart to the ADA."[9] *Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 175 (D.P.R. 2008); *see also Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 80 (1st Cir. 2008), *superseded by statute*, ADA Amendment Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3553-55, *as recognized in Mekonnen v. OTG Mgmt., LLC*, 394 F. Supp. 3d 134, 154 (D. Mass. 2019). Notwithstanding, "the only noticeable difference between Laws 100 and 44 is that the latter is more specific as to which employees it protects." *Vaello-Carmona v. Siemens Med. Sols. USA, Inc.*, 781 F.3d 1, 4 (1st Cir. 2015) (cleaned up).

"The United States[] has not waived its sovereign immunity for suits under Puerto Rico's laws." *Velazquez-Rivera v. Danzig*, 234 F.3d 790, 795 (1st Cir. 2000); *see also Soriano v. United States*, 352 U.S. 270, 276 (1957) ("Limitations and conditions upon which the Government consents to be

---

[9] Plaintiffs did not raise any claims under Law 44. *See* Docket No. 1

sued must be strictly observed and exceptions thereto are not to be implied."). Therefore, the Law 100 claims asserted against the Federal Defendants are hereby **DISMISSED WITH PREJUDICE**.

Moreover, Law 100 only applies against an employer. Plaintiff was not employed by Aerostar or the Port Authority. Therefore, Plaintiffs' Law 100 claims against Aerostar and the Port Authority are hereby **DISMISSED WITH PREJUDICE**.

### B. Article 1802

Plaintiffs also bring claims under Puerto Rico's general tort statute, Article 1802, against Defendants. "Article 1802 of the Puerto Rico Civil Code provides that a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." *Escalera-Salgado v. United States*, 261 F. Supp. 3d 163, 167 (D.P.R. 2016) (cleaned up). Under Puerto Rico law, negligence "is generally defined as the failure to exercise due diligence to avoid foreseeable risks." *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 87 (1st Cir. 2020) (cleaned up). To succeed in an Article 1802 claim, a plaintiff must allege three elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission." *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007). Under Article 1802, the statute of limitations for a tort action is one year. *Redondo Constr. v. Izquierdo*, 929 F. Supp. 2d 1, 5 (D.P.R. 2012). "The statute of limitations or prescription period for those tort actions begins to run from the time the aggrieved person has knowledge thereof . . . once the injured party knows both that he has suffered a harm and who is responsible for it." *Id.* (cleaned up).

The Article 1802 claims against the Federal Defendants are disallowed for multiple reasons. First, claims under Article 1802 are barred if the conduct is covered under a specific state or federal labor law. *See Diaz-Alvarez v. Ramallo Bros. Printing*, 2017 WL 1277471, at *2 (D.P.R. Mar.

24, 2017) ("An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked."). Here, the conduct complained of is covered by the employment statutes invoked against these Federal Defendants. Second, tort actions against the federal government may only be brought under the Federal Tort Claims Act ("FTCA"),[10] which provides a limited waiver of sovereign immunity as to certain claims. *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983) ("[T]he Federal Tort Claims Act[] had been enacted to waive the Government's sovereign immunity.").[11] Thus, the Article 1802 claims against the Federal Defendants are hereby **DISMISSED WITH PREJUDICE**.

On the other hand, Aerostar and the Port Authority argue that the statute of limitations accrued as early as March 18, 2014, when Plaintiff filed the 2014 Report complaining of mold and humidity issues in the office. Docket Nos. 25 at 18; 29 at 2. Aerostar also contends that Plaintiff knew of her alleged damages since October 22, 2014, when she was first hospitalized for a lung

---

[10] As noted in DHS's briefings, "DHS is not the proper party to the action to the extent Plaintiffs are making an FTCA claim. Under 28 U.S.C. § 2679(a), an agency is not a proper party to an action, such as this one, where a claim is brought pursuant to the FTCA." Docket No. 41 at 4 n.2; *see also FDIC v. Meyer*, 510 U.S. 471, 476 (1994) ("Thus, if a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name,' despite the existence of a sue-and-be-sued clause.")

[11] Even if Plaintiffs alleged an FTCA claim, which they did not, such a claim would be barred by the Federal Employees' Compensation Act ("FECA") because Plaintiff is a federal employee. "FECA is a federal workers' compensation scheme designed to provide redress for work-related injuries." *Gill v. United States*, 471 F.3d 204, 205 (1st Cir. 2006). The statute

> specifically excludes liability under a Federal tort liability statute . . . FECA's exclusive liability provision . . . was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Id*. at 206 (quoting 5 U.S.C. § 8116(c) and *Lockheed*, 460 U.S. at 193-94). Plaintiffs make no mention of FECA in their Complaint.

CIVIL NO. 17-1715 (JAG)                                                        14

condition. Docket No. 25 at 18. At the latest, Aerostar argues that the claim accrued on October

13, 2015, when the GSA Lease Management Specialist requested an air quality test from the

Aerostar Holding Corporation Manager. *Id.* at 19. However, the Complaint alleges that Plaintiff

was seeking secondary medical opinions until October 13, 2016, which indicates she was seeking

an explanation for her respiratory condition. Docket No. 1 at ¶ 32. Furthermore, it was not until

OSHA informed Plaintiff on November 2, 2016, that health and safety violations were found in her

workplace that she learned that her ailments were likely caused by Aerostar's unsafe office

conditions. *See id.* ¶ 33. Plaintiffs, thus, had until November 2, 2017, to initiate this case and the

Complaint was timely filed on May 25, 2017. Accordingly, Aerostar and the Port Authority's

request to dismiss the Article 1802 claims asserted against them is hereby **DENIED**.

## CONCLUSION

Pursuant to this Opinion and Order, DHS's Motion to Dismiss is hereby **GRANTED**, and

Aerostar and the Port Authority's Motion to Dismiss are hereby **GRANTED in part** and **DENIED**

**in part**. Partial Judgment shall be entered accordingly.

Defendants' Answers to the Complaint due by **May 15, 2023**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, May 1, 2023.


                                                        s/ Jay A. Garcia-Gregory
                                                        JAY A. GARCIA-GREGORY
                                                        United States District Judge